IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD A. MANLEY | : CIVIL ACTION |
| 523 Ridge Avenue | : |
| Media, PA 19063 | : |
|     Plaintiff, | : |
| v. | : |
| PREMIUM SPRAY PRODUCTS, INC. | : |
| 1255 Kennestone Circle | : |
| Marietta, GA 30066 | : No.: |
|     and | : |
| COIM USA Group, t/d/b/a | : |
| COIM GROUP | : |
| 286 Mantua Grove Road | : |
| West Deptford, NJ 08066 | : |
|     and | : |
| COIM USA HOLDING, INC. | : |
| 286 Mantua Grove Road | : |
| West Deptford, NJ 08066 | : |
|     and | : |
| COIM USA, INC. | : |
| 286 Mantua Grove Road | : |
| West Deptford, NJ 08066 | : |
|     Defendants. | : |

## COMPLAINT

Plaintiff, **DONALD A. MANLEY**, by and through his undersigned counsel, Jeffrey R. Lessin & Associates, & P.C., files this Complaint and sues Defendants, **PREMIUM SPRAY PRODUCTS, INC.**, **COIM USA Group, t/d/b/a COIM GROUP**, **COIM USA HOLDING, INC.** and **COIM USA, INC.** and alleges:

## INTRODUCTION

1. This is an action at law for damages due to severe personal injuries sustained by a citizen of the United States and domiciliary of the Commonwealth of Pennsylvania, against corporate entities, **PREMIUM SPRAY PRODUCTS, INC.** and **COIM USA Group, t/d/b/a COIM GROUP**, **COIM USA HOLDING, INC.** and **COIM USA, INC.** respectively.

2. As discussed in detail below, on Monday, July 8, 2013, Plaintiff, **DONALD A. MANLEY** was seriously injured in an industrial incident, due to the negligence and carelessness of Defendants, causing serious and permanent injuries to Plaintiff **DONALD A. MANLEY**.

3. By this complaint, Plaintiff seeks judicial redress for said serious and permanent injuries.

4. Plaintiff brings this claim in this Court based upon diversity of citizenship between the litigants.

## JURISDICTION AND VENUE

5. Plaintiff is a citizens of the United States and domiciliary of the Commonwealth of Pennsylvania.

6. Defendants are, based upon knowledge, information and belief, corporate entities, each having a corporate headquarters in Georgia and New Jersey respectively, as per the caption.

7. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1332(a)(1), 1332(c)(1) and 1441, this being an action for damages authorized by law, where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

8. The matter in controversy exceeds, exclusive of interest and costs, the sum or value of Seventy Five Thousand Dollars ($75,000.00).

9. Venue is properly placed in the United States District Court of the Eastern District of Pennsylvania pursuant, inter alia, to 28 U.S.C. §§ 1391(c) and 1391(a)(3) as it is where the Plaintiff resides and where Defendants, and each of them regularly conduct business, and have regular and systematic contact more than the minimum contact required by law; Defendants regularly and continuously conduct business, enter and execute contracts in Pennsylvania, and within the Eastern District of Pennsylvania, including but not limited to, using the highways in this district to ship goods, contracting with shippers to do business in this district, contracting with, supplying and doing business with spray polyurethane foam application contractors and companies to conduct business and sell and install their products.

## PARTIES

10. Plaintiff, **DONALD A. MANLEY** is a citizen of the United States and domiciliary of the Commonwealth of Pennsylvania.

11. Defendants **PREMIUM SPRAY PRODUCTS, INC.** and **COIM USA Group, t/d/b/a COIM GROUP, COIM USA HOLDING, INC.** and **COIM USA, INC.** are, based upon knowledge, information and belief, corporate entities, each having a corporate headquarters in Georgia and New Jersey respectively, as per the caption.

## FACTUAL ALLEGATIONS

12. On Monday, July 8, 2013, Plaintiff, **DONALD A. MANLEY** suffered a serious and permanent right hand injury, due to the negligence and carelessness of Defendants, **PREMIUM SPRAY PRODUCTS, INC.** (hereinafter referenced as "**PREMIUM**") and **COIM**

3

USA Group, t/d/b/a **COIM GROUP, COIM USA HOLDING, INC.** and **COIM USA, INC.** (hereinafter collectively referenced as "**COIM**").

13. At all times relevant hereto, Defendants' respective acts and omissions were committed by and through agents, employees, servants and/or workmen, who were then and there acting within the course and scope of their agency relationship with each Defendant.

14. On and before Saturday, July 6, 2013, Plaintiff **DONALD A. MANLEY** worked part-time for a trucking company.

15. On or about Saturday, July 6, 2013, Plaintiff **DONALD A. MANLEY,** as part of his part-time employment, picked up a tanker truck at a facility owned by non-party Liquid Transport Corp., an Indiana company which does nationwide business and has service locations where it regularly conducts business in Pennsylvania, New Jersey and Delaware.

16. On or about Saturday, July 6, 2013, after picking up said tanker truck, Plaintiff, **DONALD A. MANLEY,** traveled to the West Deptford, New Jersey Depot of Defendant **COIM** to have said tanker truck loaded with approximately 40,000 pounds of liquid plastic and/or polyurethane, for delivery to Defendant **PREMIUM**.

17. On or about Saturday, July 6, 2013, while Plaintiff **DONALD A. MANLEY** was at the said facility of Defendant **COIM**, a new laborer named either "Russell" or "Rusty" (hereinafter referred as "Rusty" for convenience) was assigned to offload the product from Defendant **COIM**'s tanks to the said tanker truck.

18. Rusty had to seek help from another employee of Defendant **COIM**, as Rusty

stated that he did not know how to offload the product.

19. Another employee of Defendant **COIM** told Rusty what hoses to use.

20. Before Plaintiff left the said depot of Defendant **COIM**, Rusty informed Plaintiff that he had properly closed the fill valve.

21. Once he got a certificate of authenticity, Plaintiff left the said depot of Defendant **COIM**, operating the said tanker trucker and its load of liquid plastic and/or polyurethane.

22. Plaintiff then drove the said tanker truck to the facility of Defendant **PREMIUM** in Marietta, Georgia to deliver the product..

23. Plaintiff arrived at the said facility of Defendant **PREMIUM** on the evening of Sunday, July 7, 2013, and slept in the truck, because Defendant **PREMIUM**'s facility was not open for business when Plaintiff arrived.

24. On Monday, July 8, 2013, at approximately 8:00 a.m., the receiver, an employee of Defendant **PREMIUM** whom the Plaintiff believes identified himself as "Lewis" (hereinafter referenced as "Lewis" for convenience) indicated to Plaintiff that he was going to unload the product and told Plaintiff to hook the requisite hoses up to do so.

25. Once the hoses were hooked up, Lewis started to put pressure in the said tanker truck's tank.

26. While Lewis was starting to put pressure in the said tank, he was distracted and was focusing on complaining about the fact that he was forty-eight years old, had a twenty-six year old girlfriend who was leaving him, and that he wanted to hurry up and finish this unloading job so he could go home and attempt to convince his young girlfriend

not to leave him.

27. After increasing the pressure in the said tank, Lewis told Plaintiff that there was a leak in the said tank.

28. Lewis refused to go up on the tank and check the leak, so Plaintiff did so.

29. When Plaintiff checked, he found that the leak was coming from the cap on the four inch fill valve, which had been negligently cross-threaded by Rusty at Defendant **COIM**'s facility, thereby causing the leak.

30. Plaintiff thereupon asked Lewis to bleed the pressure off the tank, so that Plaintiff could safely remove the cap from the four inch fill valve, and then replace it properly to prevent leakage.

31. Lewis indicated that he was bleeding the pressure off the tank, but as Plaintiff later discovered, he did not do so, but instead continued to increase the pressure in said tank.

32. As a direct result of Lewis continuing to increase the pressure inside the tank, together with the negligently cross-threaded four inch fill valve cap, the cap blew off the valve and hit Plaintiff's right hand, causing the serious and permanent injuries detailed herein.

33. At no time relevant hereto did any Plaintiff do anything negligent or unforeseeable.

34. After injuring Plaintiff's right hand, another employee of Defendant **PREMIUM,** identifying himself as "Tony", came out and Lewis, in between repeated complaints of his girlfriend leaving him and his mother having a stroke, mentioned that

6

others were seriously injured there in similar "accidents" at Defendant **PREMIUM**'s facility, and that two of the victims had been killed. Lewis mentioned that one of the victims of his previously overfilling a tank was decapitated and added that he frequently over-pressurizes tanks until the safety valves pop.

## COUNT I
## PLAINTIFF DONALD A. MANLEY v. DEFENDANT PREMIUM SPRAY PRODUCTS, INC.
## NEGLIGENCE

35. Plaintiff incorporates herein by reference all of the allegations contained in paragraphs 1 through 34, inclusive, as fully as though the same were set forth herein at length.

36. The carelessness and/or negligence of the Defendant, **PREMIUM**, by and through its management, agents, employees, servants and/or workmen, including, but not limited to, the receiver identified as Lewis, who were then and there acting within the course and scope of their agency relationship with Defendants, includes, inter alia, the following:

   a. failing to provide proper and adequate attendance, attention and/or staffing on the subject unloading of product from the said tanker truck, which it and its employee (Lewis) knew and had reason to know had an improperly threaded cap on the four inch fill valve;

   b. failing to provide an adequately trained attendant, who would not continue to increase the pressure in said tank while stating that he was doing the opposite;

7

c.    by and though its employee and receiver, leading Plaintiff to believe that he was bleeding off the pressure from the said tank, when he was actually continuing to increase the pressure in said tank;

d.    by and though its employee and receiver, placing personal interests and expediency (i.e. wanting to get the job over with so that Lewis could go chase his girlfriend) over safety;

e.    by and though its employee and receiver, continuing to increase the pressure in said tank when he knew, and/or should have known that by doing so, he was dramatically increasing the likelihood of an industrial accident, in the form of a valve cap blowing off the said tank at high velocity, and hitting a person situated as the Plaintiff was situated;

f.    failing to properly warn Plaintiff, by and though its employee and receiver, that he was increase the pressure in said tank when he had ordered Plaintiff to get up on said tank in the vicinity of the four inch fill valve, the source of a tank pressure leak, thereby dramatically increasing the likelihood of an industrial accident, in the form of a valve cap blowing off the said tank at high velocity, and hitting Plaintiff;

g.    failing to take adequate steps to prevent employees such as its receiver, Lewis, from increasing the pressure in said tank while Plaintiff was located in the vicinity of the source of a tank pressure leak, thereby dramatically increasing the likelihood of an industrial

        accident, in the form of a valve cap blowing off the said tank at high velocity, and hitting Plaintiff;

    h.     failing to adequately train, educate, supervise and/or discipline Defendants' employees, including, but not limited to the receiver identified as Lewis, who are charged with attending, supervising and/or performing the unloading of tanker trucks which deliver loads of liquid plastic and/or polyurethane foam, as to the dangers of increasing the pressure in a product tank while there a known and/or suspected tank pressure leak;

    i.     failing to properly promulgate, follow, enforce, or require compliance by its employees, including, but not limited to the receiver identified as Lewis and/or others who were supposed to be attending the unloading of tanker trucks which deliver loads of liquid plastic and/or polyurethane foam, reasonable orders, rules, regulation, and/or guidelines regarding the attending, supervising and/or performing the unloading of tanker trucks which deliver loads of liquid plastic and/or polyurethane foam, as to the dangers of increasing the pressure in a product tank while there a known and/or suspected tank pressure leak;

    j.     violating applicable laws, statutes, ordinances and/or safety standards with regard to safety and security unloading of tanker trucks which deliver loads of liquid plastic and/or polyurethane foam.

37.     As the result of the carelessness, negligence and/or gross negligence of the

Defendant **PREMIUM,** as herein before alleged, Plaintiff **DONALD A. MANLEY** suffered serious and severe injuries, including, but not limited to, right thumb metacarpal bone fracture with significant proximal metacarpal displacement, angulation and fracture comminution, necessitating a right thumb flexor sheath injection, and surgery, including ORIF, pin, plate and screw insertion; nervous shock, right wrist with anatomic snuffbox tenderness suspicious for underlying scaphoid fracture. and aggravation and/or exacerbation of all known and unknown preexisting medical conditions. Plaintiff **DONALD A. MANLEY** suffered internal injuries of an unknown nature; he suffered severe aches, pains, mental anxiety and anguish, and a severe shock to his entire nervous system, and other injuries the full extent of which are not, or may not be, yet known. He has in the past and will in the future undergo severe pain and suffering as a result of which he has been in the past and will in the future be unable to attend to his usual activities, all to his great financial detriment and loss.

38. As a result of the aforesaid occurrence, Plaintiff **DONALD A. MANLEY** has been compelled, in order to effectuate a cure for the aforesaid injuries, to expend large sums of money for medicine and medical attention and may be required to expend additional sums for the same purposes in the future.

39. As a result of the aforesaid occurrence, Plaintiff **DONALD A. MANLEY** has been prevented from attending to his usual and daily activities and duties, and may be so prevented for an indefinite time in the future, all to his great detriment and loss.

40. As a result of the aforesaid occurrence, Plaintiff, **DONALD A. MANLEY** has suffered physical pain, mental anguish and humiliation and he may continue to suffer same

for an indefinite period of time in the future.

**WHEREFORE**, Plaintiff, **DONALD A. MANLEY**, demands damages of the Defendant herein, **PREMIUM SPRAY PRODUCTS, INC.**, in a sum in excess of Seventy Five Thousand ($75,000.00) Dollars plus costs.  Plaintiff, **DONALD A. MANLEY**, also hereby demands a trial by jury.

## COUNT II
## PLAINTIFF DONALD A. MANLEY v. DEFENDANTS COIM USA Group, t/d/b/a COIM GROUP, COIM USA HOLDING, INC. and COIM USA, INC.
## NEGLIGENCE

41. Plaintiff incorporates herein by reference all of the allegations contained in paragraphs 1 through 40, inclusive, as fully as though the same were set forth herein at length.

42. The carelessness and/or negligence of the Defendants, **COIM USA Group, t/d/b/a COIM GROUP, COIM USA HOLDING, INC.** and **COIM USA, INC.** (hereinafter referenced collectively as "**COIM**"), by and through its management, agents, employees, servants and/or workmen, including, but not limited to, the laborer identified as Rusty, who were then and there acting within the course and scope of their agency relationship with Defendant **COIM**, includes, inter alia, the following:

    a.    failing to provide proper and adequate attendance, attention and/or staffing on the subject offloading of product to the said tanker truck;

    b.    by and through its employee (Rusty) improperly threaded the cap on the four inch fill valve, thereby causing a pressure leak when pressure was later applied to the said tank;

c. failing to provide an adequately trained attendant, who knew all the requisite aspects of the job of offloading product into a tanker truck, including, but not limited to properly threading the caps to fuel valves;

d. by and though its employee, leading Plaintiff to believe that the cap to the four inch fill valve was properly replaced and threaded;

e. by and though its employee, failing to observe safety precautions, including, but not limited to inspecting all valve caps for proper installation/application, before representing to Plaintiff that the cap(s) were secure;

e. by and though its employee, failing to properly warn Plaintiff, that he was sending Plaintiff off from Defendant's depot with the cap on the four inch fill valve improperly threaded, thereby dramatically increasing the likelihood of an industrial accident in the form of a valve cap blowing off the said tank at high velocity and hitting Plaintiff if and when the tank pressure was increased to unload the product at its destination;

f. failing to take adequate steps to prevent employees such as its laborer, Rusty, from improperly cross-threading the caps to fuel valves, thereby dramatically increasing the likelihood of an industrial accident, in the form of a valve cap blowing off the said tank at high velocity, and hitting Plaintiff, or to take steps to remedy such problems;

g. failing to adequately train, educate, supervise and/or discipline

    Defendants' employees, including, but not limited to the laborer identified as Rusty, who are charged with attending, supervising and/or performing the offloading of product into tanker trucks which deliver loads of liquid plastic and/or polyurethane foam, as to the dangers of improperly cross-threading the caps to fuel valves;

 h. failing to properly promulgate, follow, enforce, or require compliance by its employees, including, but not limited to the laborer identified as Rusty and/or others who were supposed to be attending the offloading of product into tanker trucks which deliver loads of liquid plastic and/or polyurethane foam, reasonable orders, rules, regulation, and/or guidelines regarding the attending, supervising and/or performing the unloading of tanker trucks which deliver loads of liquid plastic and/or polyurethane foam, as to the dangers of improperly cross-threading the caps to fuel valves;

 i. violating applicable laws, statutes, ordinances and/or safety standards with regard to safety and security when offloading product into tanker trucks which deliver loads of liquid plastic and/or polyurethane foam.

  43. As the result of the carelessness, negligence and/or gross negligence of the Defendant **COIM**, as herein before alleged, Plaintiff **DONALD A. MANLEY** suffered serious and severe injuries, including, but not limited to, right thumb metacarpal bone fracture with significant proximal metacarpal displacement, angulation and fracture comminution, necessitating a right thumb flexor sheath injection, and surgery, including ORIF, pin, plate and screw insertion; nervous shock, right wrist with anatomic snuffbox tenderness

suspicious for underlying scaphoid fracture. and aggravation and/or exacerbation of all known and unknown preexisting medical conditions. Plaintiff **DONALD A. MANLEY** suffered internal injuries of an unknown nature; he suffered severe aches, pains, mental anxiety and anguish, and a severe shock to his entire nervous system, and other injuries the full extent of which are not, or may not be, yet known. He has in the past and will in the future undergo severe pain and suffering as a result of which he has been in the past and will in the future be unable to attend to his usual activities, all to his great financial detriment and loss.

44. As a result of the aforesaid occurrence, Plaintiff **DONALD A. MANLEY** has been compelled, in order to effectuate a cure for the aforesaid injuries, to expend large sums of money for medicine and medical attention and may be required to expend additional sums for the same purposes in the future.

45. As a result of the aforesaid occurrence, Plaintiff **DONALD A. MANLEY** has been prevented from attending to his usual and daily activities and duties, and may be so prevented for an indefinite time in the future, all to his great detriment and loss.

46. As a result of the aforesaid occurrence, Plaintiff, **DONALD A. MANLEY** has suffered physical pain, mental anguish and humiliation and he may continue to suffer same for an indefinite period of time in the future.

**WHEREFORE**, Plaintiff, **DONALD A. MANLEY**, demands damages of the Defendants herein, **COIM USA Group, t/d/b/a COIM GROUP, COIM USA HOLDING, INC.** and **COIM USA, INC.**, in a sum in excess of Seventy Five Thousand ($75,000.00) Dollars plus costs. Plaintiff, **DONALD A. MANLEY**, also hereby demands a trial by jury.

## COUNT III
## PLAINTIFF DONALD A. MANLEY v. DEFENDANT PREMIUM SPRAY PRODUCTS, INC.
## CLAIM FOR PUNITIVE DAMAGES

47. Plaintiff incorporates herein by reference all of the allegations contained in paragraphs 1 through 46, inclusive, as fully as though the same were set forth herein at length.

48. In light of the admissions of Lewis, the receiver and employer of Defendant **PREMIUM**, (1) that five others were previously injured there in similar "accidents" at Defendant **PREMIUM**'s facility, (2) that two of the said victims had been killed, (3) that one of the said victims had been decapitated, and that in light of these tragedies, Lewis, acting of behalf of Defendant **PREMIUM**, still frequently over-pressurizes tanks until the safety valves pop, without any discipline or sanction by Defendant **PREMIUM**, the misconduct of Defendant **PREMIUM** alleged herein can be fairly said to be egregious, outrageous, done with a gross and wanton disregard for human life and safety, and warrants an award of punitive damages.

45. In addition to the egregious conduct referenced above, after Plaintiff's injuries, the employees of Defendant **PREMIUM**, including Tony, and/or other employees of Defendant **PREMIUM**, refused to give plaintiff ice or first aid, and refused to get him medical attention after consulting with someone in management or insurance with Defendant **PREMIUM**, despite Plaintiff requesting four (4) times that the employees of Defendant **PREMIUM** get him some medical attention.

**WHEREFORE**, Plaintiff, **DONALD A. MANLEY**, demands punitive damages of the Defendant herein, **PREMIUM SPRAY PRODUCTS, INC.**, in a sum in excess of Seventy

Five Thousand ($75,000.00) Dollars plus costs.  Plaintiff, **DONALD A. MANLEY**, also hereby demands a trial by jury.

        **Respectfully Submitted,**

        **JEFFREY R. LESSIN & ASSOCIATES, P.C.**

        BY:    **JRL5292**
                  **JEFFREY R. LESSIN, ESQUIRE**
                  **MARK T. RICHTER, ESQUIRE**
                  **I.D. Nos. 43801, 45195**
                  **Attorneys for Plaintiffs**
                  **1515 Market Street, Suite 714**
                  **Philadelphia, PA 19102**
                  **215-599-1400**